UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:16-CR-070 JD |
| | ) | |
| D'SHAWN JEANES | ) | |

# ORDER

Defendant D'Shawn Jeanes is a felon who was found in possession of a firearm during a traffic stop. The stop was prompted by a 911 call in which the caller reported that a man in a car ahead of her was waving around a gun and yelling slurs. Officers stopped the car, which Mr. Jeanes was driving, and Mr. Jeanes consented to a search and admitted to possessing a firearm. After being charged with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1), Mr. Jeanes moved to suppress evidence on the ground that the traffic stop was unlawful. The magistrate held a hearing on the motion and prepared a report and recommendation. He concluded that the information from the 911 caller was sufficiently reliable and provided reasonable suspicion for the stop, so he recommended that the motion be denied.

Mr. Jeanes has now filed brief objections to the report and recommendations. Pursuant to 28 U.S.C. § 636(b)(1)(B), when a magistrate judge conducts an evidentiary hearing and submits proposed findings of fact and recommendations, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Mr. Jeanes begins by agreeing that the factual findings in the report and recommendation are accurate, so the Court adopts those findings. Mr. Jeanes objects only that the report and recommendation omitted that the dispatcher stated over the radio that the gun may have had been

thrown out of the car. As the government notes, however, the report and recommendation did include that fact. [DE 34 p. 3 n.3]. In addition, Mr. Jeanes has never made any argument as to how that fact should affect the disposition of his motion, so any argument on that basis is waived.[1]

Mr. Jeanes also briefly objects to the report and recommendation's legal conclusions, arguing that the 911 call did not justify the stop. The Court disagrees, and adopts the magistrate judge's thorough and well-reasoned analysis. "Officers may conduct an investigatory stop of a vehicle if articulable facts support a reasonable suspicion that criminal activity is afoot." *United States v. Drake*, 456 F.3d 771, 774 (7th Cir. 2006). When a stop is based on an anonymous tip, this inquiry encompasses two questions: whether the information provided is sufficiently reliable, and if so, whether that information supports reasonable suspicion. *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014).

Mr. Jeanes argues that the 911 call here was not reliable, but the Court disagrees, as the call included many indicia of reliability. The caller had eyewitness knowledge of the incident she was reporting, reported the incident as it was happening, and used the 911 emergency system to report the information. Those same factors satisfied the Supreme Court in *Navarette*. 134 S. Ct. at 1689–90. In addition, though the caller declined to give her name, she gave a variety of other information about her identity, indicating that she was not withholding her name for an illicit purpose. As just noted, she placed her call to the 911 center, which recorded the call, and which presumably captured her phone number. She also told the dispatcher what kind of car she was driving and where she was located. She also stayed on the line for about three minutes, making

---

[1] Moreover, it would seem that discarding a firearm out of a moving car in a populated area would provide even greater reason to stop the car to investigate criminal activity.

herself available for further questions up until the time the stop occurred, at which time she hung up. The only information the caller declined to provide was her name, but the dispatcher did not even ask for that information until after the stop had already been commenced. Finally, the magistrate judge found that the caller's tone and demeanor during the call further supported her credibility. Taken together, those factors provide sufficient indicia of reliability to justify the officers in relying on the information, and the Seventh Circuit has held on multiple previous occasions that similar tips were sufficiently reliable for these purposes. *E.g.*, *United States v. Hampton*, 585 F.3d 1033, 1038–39 (7th Cir. 2009); *United States v. Wooden*, 551 F.3d 647 (7th Cir. 2008); *United States v. Drake*, 456 F.3d 771, 774–75 (7th Cir. 2006); *United States v. Fields*, 373 F. App'x 624 (7th Cir. 2010); *see also United States v. Watson*, No. 2:15-cr-79, 2016 WL 4578152, at *4–6 (N.D. Ind. Sept. 2, 2016).

Mr. Jeanes next argues that, even believing the information, it still did not provide reasonable suspicion to justify the stop, as merely possessing or waving a firearm is not a criminal offense. The Court disagrees. The caller stated that she saw a person waving a gun out of a moving vehicle and that the person was yelling "slurs and stuff." This occurred in a populated area during the middle of the afternoon. The caller further reported that she was scared by the person's actions, and she spoke in an excited manner. These facts portrayed erratic and potentially dangerous behavior that warranted police intervention to investigate and prevent a possible incident of violence. Thus, even if the officers lacked probable cause that a criminal offense had already occurred, they still had reasonable suspicion that criminal activity was afoot—that the individual waving a firearm from a moving car in a populated area while yelling slurs, causing bystanders to be scared, posed an ongoing threat to public safety. In both *Wooden* and *Drake*, the Seventh Circuit found that similar tips of potentially dangerous behavior

involving firearms justified *Terry* stops to prevent dangerous situations, without identifying any particular criminal offense that had already been committed. *Drake*, 456 F.3d at 774–75 ("[W]e recognize the particular duty of police officers to speedily respond to emergency situations reported by individuals through the 911 system. . . . It is enough in this case that [the caller's] 911 call reported an immediate threat to public safety and that she provided sufficient details to allow the officers to identify the suspects."); *Wooden*, 551 F.3d at 650 (noting that "a report by a person claiming to have seen a gun drawn in public provided articulable suspicion for a *Terry* stop and frisk," and finding reasonable suspicion where an anonymous 911 caller reported a man arguing with his girlfriend while holding a gun)); *see also Fields*, 373 F. App'x at 627–28. The same is true here.

In addition, as the magistrate judge found, the 911 call provided reasonable suspicion that the individual had committed the offenses of pointing a firearm or criminal recklessness. Mr. Jeanes' objection is that waving a firearm does not itself constitute those offenses. However, the individual in question was not merely waving a firearm, he was waving a firearm out of a moving car while driving through a populated area in the middle of the day, causing at least one nearby driver to be afraid for her safety. Under those circumstances, the officers could reasonably suspect that the firearm had been pointed at a bystander or created a substantial risk of bodily injury to another person. *See Al-Saud v. Indiana*, 658 N.E.2d 907, 910 (Ind. 1995) ("The brandishing of a firearm in a congested area or during a dispute can create a variety of risks of bodily injury to others . . . .").

Finally, Mr. Jeanes argues that the tip did not identify the subject specifically enough for the officers to know which car to stop. Mr. Jeanes concedes that the caller stated that the person waving the firearm was a black male inside a black Suburban, but he argues that black

4

Suburbans are so ubiquitous that the officers could not pull over any such vehicle unless they had additional identifying details. The caller did not provide only the model and color of the vehicle and a description of an occupant, though; she identified its specific location at a specific time, along with its direction of travel. Officers found such a car with such an occupant in that same area and in that same direction only minutes later. No more was required, and the fact that another officer happened to see a different black Suburban an unspecified distance away after the firearm in question was found is irrelevant. *Fields*, 373 F. App'x at 628 ("'[P]olice observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance,' is sufficient to establish reasonable suspicion to investigate the disturbance." (quoting *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003))).

For those reasons, the Court concurs with the report and recommendation and finds that the stop was supported by reasonable suspicion, so suppression is not warranted. Accordingly, the Court OVERRULES Mr. Jeanes' objections [DE 35] to the Report and Recommendation; ADOPTS the Report and Recommendation [DE 34]; and DENIES the motion to suppress [DE 22].

SO ORDERED.

ENTERED: January 9, 2017

                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court